**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIAA COMMERCIAL FINANCE, INC., <br><br> Plaintiff, <br><br> v. <br><br> JAMES GALUSHA, *et al.*, <br><br> Defendants. | Civ. No. 19-14809 (ES) (CLW) <br><br> OPINION |

MCNULTY, DISTRICT JUDGE

Before the Court is the motion (DE 9) of plaintiff TIAA Commercial Finance, Inc.[1] for default judgment against defendants James and Sharron Galusha. (DE 9). The matter has been reassigned from Judge Salas to me for purposes of this motion. Having considered TIAA's submissions, I decide this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

To summarize, I have found that a default judgment should be granted as to the claim regarding the Notes, but denied as to the claim regarding the Michelangelo Lease. Within 14 days, plaintiff shall file a submission stating whether it wishes to opt to abandon the Michelangelo Lease Claim and have the Court enter judgment on the Notes claim (thus ending the case), or whether it wishes to continue to pursue the claim regarding the Michelangelo Lease *via* service of an amended complaint and a new motion for default judgment.

---

[1] Formerly known as EverBank Commercial Finance, Inc. ("ECF").

1

## I. BACKGROUND[2]

TIAA is a financial services corporation. (Complaint ¶ 1). James and Sharron Galusha are the vice president and president (respectively) of Silverado Stages, Inc., a service-oriented passenger transportation business. (*Id.* ¶¶ 4 & 7). TIAA entered into two master security agreements with Silverado in 2013 and 2015. (*Id.* ¶¶ 7–8). Pursuant to these master security agreements, "Silverado acknowledged that [TIAA] would, from time to time, enter into certain credit agreements with Silverado for the purchase of certain property and/or equipment as further described in each individual Note and Schedule executed by Silverado." (*Id.* ¶ 9). TIAA and Silverado executed three relevant notes and schedules from 2013 to 2015[3] ("Notes"). (*Id.* ¶¶ 10–12).

In or around December 2016, Silverado acquired another service-oriented passenger transportation business called Michelangelo Leasing, Inc. (*Id.* ¶ 13). Before Silverado acquired Michelangelo, on February 29, 2016, "Michelangelo entered into a 36-month equipment lease with Imagine

---

[2] Citation to record documents will be abbreviated as follows:

    Complaint = TIAA's complaint, DE 1

    Guarantees = The December 12, 2013 and March 11, 2015 personal guaranty agreements signed by the Galushas and attached as exhibits H and I to TIAA's motion for default judgment, DE 9-12 and 9-13.

    Mov. Br. = TIAA's brief in support of its motion for default judgment, DE 9-1

[3] The first note and schedule, dated on or about December 12, 2013, was in the amount of $481,428.00 for the purchase of one 2014 Setra S407 Motorcoach. (Complaint ¶ 10). A second note and schedule, also dated on or about December 12, 2013, was in the amount of $1,444,284.00 for the purchase of three 2014 Setra S407 Motorcoaches. (*Id.* ¶ 11). On March 11, 2015, Plaintiff and Silverado executed a third note and schedule for two 2013 Van Hool/T2145 busses and one 2011 Van Hool/T2145 bus in exchange for $1,125,000.00. (*Id.* ¶ 12).

2

Case 2:19-cv-14809-ES-CLW   Document 10   Filed 11/30/20   Page 3 of 18 PageID: 161

Technology [Group LLC]" (the "Michelangelo Lease"). (*Id.* ¶ 14). At the time the Michelangelo Lease was formed, Imagine was already in business with TIAA; in October 2014, TIAA and Imagine entered into a "Master Agreement and Assignment of Leases – Notification Assignment, [ ] whereby [TIAA] acquired certain leases from Imagine." (*Id.* ¶ 15). Through this agreement with Imagine, TIAA acquired the Michelangelo Lease; and as a result of Silverado's acquisition of Michelangelo in 2016, "Silverado became obligated to Plaintiff under the Michelangelo Lease." (*Id.* ¶¶ 16–17).

According to the Complaint, as security for the repayment of Silverado's obligations to plaintiff, the Galushas executed two personal guarantees, dated December 12, 2013, and March 11, 2015, "whereby Defendants, among other things, jointly and severally and irrevocably and unconditionally guaranteed the full and prompt performance by Silverado of all present and/or future obligations owed by Silverado to Plaintiff." (*Id.* ¶ 18). According to TIAA, under the Guarantees, the Galushas "guaranteed that the amounts due under the Notes and Michelangelo Lease would be paid strictly in accordance with their terms." (*Id.* ¶ 19). The Galushas further agreed that their obligations under the Guarantees were independent of Silverado's, "and that a separate action or actions may be brought and prosecuted against them to enforce the Guarantees." (*Id.* ¶ 20).

These facts set the scene for Silverado's default under the Notes and the Michelangelo Lease. According to TIAA, "[s]ince at least January 1, 2018, Silverado has failed to make monthly payments of principal and/or interest

due under the Notes and Michelangelo Lease." (*Id.* ¶ 21). On or about October 5, 2018, Silverado and Michelangelo filed separate bankruptcy petitions in Arizona. (*Id.* ¶¶ 25–26).[4] As of the filing of the Complaint, TIAA alleges that it is owed (i) at least $1,857,460.94, plus interest, late fees, and collection costs on the Notes and (ii) at least $10,824.83 plus interest, late fees, and collection costs on the Michelangelo Lease. (*Id.* ¶¶ 23–24).

TIAA filed this lawsuit seeking to recover the amounts due under the Notes and Michelangelo Lease and pursuant to the Guarantees. TIAA alleges claims for (i) breach of contract; (ii) unjust enrichment; and (iii) attorneys' fees. (*Id.* ¶¶ 28–37). Because the Galushas have yet to appear in this action and respond to the Complaint, and at TIAA's request, the Clerk of Court entered default against them on December 11, 2019. TIAA now moves for default judgment pursuant to Federal Rule of Civil Procedure 55.

## II.   LEGAL STANDARD

A district court may enter default judgment against a party who has failed to plead or otherwise respond to the action filed against him. Fed. R. Civ. P. 55(b)(2). "[E]ntry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

"Before entering default judgment, the Court must address the threshold

---

[4]   Plaintiff implies that it participated in the Arizona bankruptcy proceedings. The Complaint, however, contains an obvious omission. It fails to state that this action is not barred by the automatic stay, *see* 11 U.S.C. § 362, and that the debt has not been discharged in bankruptcy. I will require such a representation before entering judgment.  *See infra.*

issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties." *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-0119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010). Then, "the Court must determine (1) whether there is sufficient proof of service, (2) whether a sufficient cause of action was stated, and (3) whether default judgment is proper." *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (internal citations omitted).

To determine whether granting default judgment is proper, the Court must consider "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008). In making these determinations, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). "While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing as long as the court ensures that there is a basis for the damages specified in the default judgement." *Days Inns Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25, 2015) (internal quotation marks and alterations omitted).

### III. DISCUSSION

#### A. Jurisdiction

I am satisfied that that the Court has both subject matter and personal jurisdiction. The Court has subject matter jurisdiction based on diversity of state citizenship pursuant to 28 U.S.C. § 1332(a). TIAA, as a corporation, is deemed to be a citizen of any state by which it has been incorporated (here, Delaware) and of the state where it has its principal place of business (here, New Jersey). 28 U.S.C. § 1332(c)(1); (Complaint ¶ 1). The Galushas are alleged to be citizens of Texas (Mov. Br. at 5).[5] TIAA plausibly alleges an amount in controversy exceeding $75,000. (*See* Complaint ¶ 33).

As to personal jurisdiction, "a [d]istrict [c]ourt typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor v. Sandy Lane Hotel Co. Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey exercises long-arm jurisdiction over non-resident defendants to the extent consistent with due process of law. *HV Assocs LLC v. PNC Bank, N.A.*, No. 17-8128, 2018 WL 1731346, at *2 (D.N.J. Apr. 10, 2018) (citing *Avdel Corp. v. Mecure*, 277 A.2d 207, 209 (N.J. 1971)). In New Jersey, contractual consents to

---

5   Actually, the Complaint itself alleges that the Galushas have "an address" in Arizona. (Complaint ¶¶ 2–3). Such an allegation is insufficient to establish domicile or citizenship for jurisdictional purposes. *See Guerrino v. Ohio Cas. Ins. Co.*, 423 F.2d 419, 421 (3d Cir. 1970). However, it appears that, through efforts to serve the Galushas, TIAA learned that the Galushas are domiciled in Texas. (Mov. Br. at 5; *see infra* Section IIIB). I am satisfied based on the factual record that diversity jurisdiction exists (and obviously the distinction between Arizona and Texas makes no difference). Particularly in light of the defaulting defendants' possession of the relevant facts, I will excuse the pleading deficiency. Any amended complaint filed in response to this Opinion and corresponding Order shall adequately allege citizenship for purposes of diversity jurisdiction.

personal jurisdiction "do not offend due process so long as the agreement is 'freely negotiated' and the provision is not 'unreasonable and unjust.'" *YA Global Investments, L.P. v. Cliff*, 15 A.3d 857, 861–62 (N.J. Super. Ct. App. Div. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)); *see also Park Inn Int'l, LLC v. Mody Enterprises, Inc.*, 105 F. Supp. 2d 370, 373 (D.N.J. 2000).

Here, the Galushas expressly consented to personal jurisdiction in this Court by signing the Guarantees, which contain a contractual consent to personal jurisdiction clause:

> "Guarantor hereby irrevocably submits to the jurisdiction of any New Jersey state or federal court sitting in New Jersey . . . in any action or proceeding arising out of or relating to this Guaranty, and the Guarantor hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such New Jersey state or federal court."

(Guarantees § 6). In the limited submissions before the Court, there is nothing to suggest that the personal jurisdiction clause was not "freely negotiated." I am thus satisfied that the parties' agreement satisfies the personal jurisdiction inquiry.

### B. Proof of Service

I am also satisfied that there is sufficient proof of service. TIAA explains that it served the Galushas pursuant to Federal Rule of Civil Procedure 4(e)(1) and New Jersey Court Rule 4:4-4(b)(1)(C). Federal Rule 4(e)(1) provides that an individual may be served in accordance with the law of the state where the district court is located or where service is made. In turn, New Jersey Court

Rule 4:4–4(b) provides the following:

> (1) *By Mail or Personal Service Outside the State.* If it appears by affidavit satisfying the requirements of R. 4:4-5(b) that despite diligent effort and inquiry personal service cannot be made in accordance with paragraph (a) of this rule, then, consistent with due process of law, *in personam* jurisdiction may be obtained over any defendant as follows:
>
> [. . .]
>
> (C) mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode . . . .

"There is no fixed standard for determining whether a party has exercised diligence. . . . Rather, the Court must conduct a fact sensitive inquiry to determine if diligence has been exercised." *Prudential Ins. Co. of Am. v. Holladay*, No. 07-5471, 2008 WL 1925293, at *2 (D.N.J. Apr. 30, 2008) (internal citation omitted). And it is the requesting party who bears the burden of establishing diligence was exercised. *Id.*

TIAA states that it "attempted to personally serve Defendants at their residence in accordance with Fed. R. Civ. P. 4(e)(2)(A)" (Mov. Br. at 5). Specifically, as documented in the Affidavit of Diligent Inquiry (DE 5) and Affidavit of Service of Summonses and Complaint (DE 6), TIAA used a process server and the Bexar County Sherriff's Office to try to effectuate service, and each made several attempts at doing so at the Galushas' last known address.[6]

---

[6]   Counsel for TIAA explains that his firm conducted a comprehensive public records search, which revealed the Galushas' last known address to be 11503 Toponga, Boerne Texas 78006-8488, which is located in Bexar County. (DE 6 ¶ 3). The firm then checked the Tax Assessor's records for Bexar County, which showed that the Galushas owned property at that same address. (*Id.* ¶ 4; *see also* DE 6-1, Ex. A).

(DE 5 ¶¶ 3–11; DE 6 ¶¶ 3–11). The attempted service forms for both James and Sharron Galusha indicate that on September 13, 2019, a security guard at the entrance of the subdivision indicated that the subject did indeed reside at the location. (DE 6-4 at 4; DE 6-5 at 4). In addition, the attempted service form for Sharron Galusha indicates that, on August 20, 2019, a subject matching the description of the subject came to the door, saw the officer (who identified himself and called out the name on the documents) but turned away and did not open the door. (DE 6-5 at 4). Unable to comply with Federal Rule 4(e)(2)(A), TIAA enacted service pursuant to Federal Rule of Civil Procedure 4(e)(1) and New Jersey Court Rule 4:4–4(b)(1)(C) by "mailing the Summonses and Complaint to Defendants via certified mail," and "simultaneously, by ordinary U.S. mail to their residence" located in Boerne, Texas. (Mov. Br. at 5; DE 6 ¶ 14).

Based on the foregoing, I am satisfied that TIAA's detailed efforts "were sufficiently diligent to warrant alternative service," *Knights Franchise Sys., Inc. v. Imperial Lodgings, LLC*, No. 14-6121, 2017 WL 1535090, at *3 (D.N.J. Apr. 26, 2017), and that TIAA properly effectuated service by mail.

Having considered the threshold issues of jurisdiction and service of process, I next consider whether TIAA has stated a sufficient cause of action and whether default judgment is proper.

    **C.**    **Sufficient Cause of Action/Meritorious Defense**

Granting default judgment is improper where the plaintiff has failed to state a sufficient cause of action. *See Wallace v. Fed. Employees of U.S. Dist.*

9

*Court, EDPA*, 325 F. App'x 96, 101 (3d Cir. 2009) ("Even if service had been timely, a default judgment still would not have been proper because, as explained below, the complaint fails to state a claim upon which relief can be granted.").

Courts in this district turn to the familiar Federal Rule 12(b)(6) standard in determining whether a sufficient cause of action has been stated. *See Mineo v. McEachern*, No. 12-01950, 2014 WL 2197032, at *2 (D.N.J. May 27, 2014) ("A court will deny a default judgment if the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6)."). "Because a defaulting party does not admit conclusions of law, a court must make an independent inquiry into whether the unchallenged facts constitute a legitimate cause of action." *Panda Rest. Grp., Inc. v. Panda Chinese & Japanese Rest., LLC*, No. 12-11718, 2018 WL 5294568, at *1 (D.N.J. Oct. 25, 2018). In the ordinary case, the issue of whether plaintiff has a legitimate cause of action will often overlap with the issue of whether the defendant has a meritorious defense. *See Ramirez v. Nacerima Indus.*, No. 10-01204, 2012 WL 3262466, at *1 (D.N.J. Aug. 8, 2012) ("[T]he Court finds that Defendants have a meritorious defense: namely, Plaintiff has failed to state a claim upon which relief can be granted.").

### 1. The Guarantees

TIAA alleges that the Galushas signed two personal guaranty agreements, which obligated them to pay the outstanding amounts due under the Notes and Michelangelo Lease. (Complaint ¶¶ 19 & 31). In support of this motion, TIAA provided the Court with copies of the Guarantees as well as

copies of, *inter alia,* the relevant Notes, master security agreements, and the Michelangelo Lease. Upon my review of the Complaint, TIAA's motion, and the relevant agreements, I conclude that TIAA has sufficiently stated a claim for breach of contract for amounts due under the Notes, but not for amounts due under the Michelangelo Lease.

To establish a cause of action for breach of contract, a plaintiff must plead three elements: (i) that a valid contract exists, (ii) that there was a breach of that contract, and (iii) resulting damages. *See Howard Johnson Int'l v. Jay Shree Ganesh*, No. 17-4658, 2018 WL 4005744, at *3 (D.N.J. Aug. 22, 2018).[7] New Jersey courts have typically understood a personal guaranty to be a contract which "must be interpreted according to its clear terms so as to effect the objective expectations of the parties." *See, e.g.*, *Housatonic Bank and Trust Co. v. Fleming*, 560 A.2d 97, 99 (N.J. Super. Ct. App. Div. 1989). Guaranty agreements are to be strictly construed, and "[a] guarantor cannot be held liable beyond the strict terms of the agreement." *Modern Techs. Grp., Inc. v. Danzi*, No. A-5287-08T3, 2010 WL 4107747, at *6 (N.J. Super. Ct. App. Div. Aug. 12, 2010).

Pursuant to the Guarantees, the Galushas "jointly and severally . . . irrevocably and unconditionally guarantee[d] the full and prompt performance by Obligor [(Silverado)] of all obligations which Obligor may presently or hereafter have to ECF [(now known as TIAA)] under the Credit Agreements. . . ."

---

[7] I apply New Jersey law pursuant to the choice of law provision in the Guarantees. (Guarantees § 13).

11

(Guarantees § 1). There are two preliminary statements to the Guarantees, which state the following:

> (1) ECF has entered into, or may from time to time enter into, various equipment leases, conditional sale contracts, security agreements, or other agreements with and/or accept notes from **SILVERADO STAGES, INC.** ("Obligor") a company organized and existing under the laws of California (such agreements, as amended from time to time, being the "Credit Agreements," and each a "Credit Agreement;" the terms defined therein and not otherwise defined herein being used herein as therein defined).
>
> (2) It is a condition precedent to the execution of a "Credit Agreement" that the Guarantor shall have executed and delivered this Guaranty.

(Guarantees at 1, Preliminary Statement). In sum, the Galushas personally guaranteed Silverado's obligations with respect to "Credit Agreements" entered into between Silverado and TIAA (then ECF), whether those obligations existed at the time of the Guarantees or sometime thereafter.

## 2. The Notes Claim

Based on the foregoing, I am satisfied that TIAA has adequately pled a breach of contract claim with respect to the amounts due under the Notes (the "Notes Claim"), and that no meritorious defense appears.

The first element of any contract claim is the existence of a valid contract, and it is satisfied by these allegations. The Notes fit squarely within the definition of a "Credit Agreement" between TIAA and Silverado. No issue arises as to guarantees of future obligations, because the Notes are dated the same dates as the Guarantees: December 12, 2013, and March 11, 2015. (Complaint ¶¶ 7–12 & 18–20). These allegations, which are substantiated by

the record documents, are sufficient to allege an existing contractual obligation for amounts due under the Notes and pursuant to the Guarantees.

The second element of the Notes Claim, a breach of that contractual obligation, has also been adequately pled. The Complaint alleges that since January 1, 2018, Silverado has failed to make payments of principal and/or interest due under the Notes, and that, notwithstanding their obligations as guarantors, the Galushas failed to make payment of the amounts owed by Silverado. (Complaint ¶¶ 21 & 32).

As for the third element, damages, TIAA alleges that as a result of the breach it is left with an outstanding balance of at least $1,857,460.94 (plus accrued interest, fees, and costs). (Complaint ¶¶ 23 & 33).

Assessment of a claim is inevitably hampered by the lack of an adversarial presentation of issues. Based on the record before me, however, I do not discern any meritorious defense that the Galushas may have to this breach of contract claim with respect to the Notes.

### 3. The Michelangelo Lease Claim

As to the claim of breach of contract with respect to the Michelangelo Lease (the "Michelangelo Lease Claim"), however, my conclusion is different. To start, there are important differences between the Notes and the Michelangelo Lease which suggest that the Lease may not be covered by the Guarantees. First, unlike the Notes, which are dated the same day as the Guarantees, the Michelangelo Lease was entered into on February 29, 2016, well after the Guarantees were executed. (Complaint ¶ 14). In addition, the Michelangelo

13

Lease was not "entered into" between Silverado and TIAA. Instead, Silverado became obligated to TIAA under the Michelangelo Lease following Silverado's acquisition of Michelangelo in December 2016 and as a result of TIAA's agreement with Imagine. (Complaint ¶¶ 13–17). This fact pulls the Michelangelo Lease outside of the scope of defined "Credit Agreements" for which the Galushas executed the Guarantees. (*See* Guarantees at 1, Preliminary Statement).

Finally, as described *supra,* a condition precedent to Silverado and TIAA entering into a "Credit Agreement" as defined in the Guarantees was that the parties would execute the form guaranty. (*Id.*). It appears that the parties intended that an executed form guaranty agreement would accompany any future qualifying "Credit Agreement" between TIAA and Silverado. In connection with the Notes, the Galushas did execute and deliver the Guarantees; as to the Michelangelo Lease, however, the Complaint is silent as to that issue.

TIAA relies on certain broad language in the Guarantees whereby the Galushas agreed to jointly and severally guaranty the full and prompt performance "of all present and/or future obligations owed by Silverado to Plaintiff." (Complaint ¶18). While I agree that this language is broad, guaranty agreements must be strictly construed, and "a guarantor's promise cannot be extended by implication." *Modern Techs. Grp.,* 2010 WL 4107747, at *6. I am particularly wary, moreover, of catchall commitments regarding obligations to be incurred in the future. Without more specific allegations tying the

14

Guarantees to the Michelangelo Lease, "[t]here is no reason to believe that the parties intended to extend the obligations of guarantee beyond those of the [Notes]." *Gen. Elec. Credit Corp. v. Castiglione,* 360 A.2d 418, 424–25 (N.J. Super. Ct. Law. Div. 1976). As a result, TIAA has failed to state a sufficient cause of action as to the breach of contract claim stemming from the Michelangelo Lease. *See Kiss Elec., LLC v. Waterworld Fiberglass Pools, N.E., Inc.*, No. 14-3281, 2015 WL 1346240, at *4 (D.N.J. Mar. 25, 2015) (rejecting in-part a breach of contract claim on a default judgment motion finding no enforceable contract).

My overall conclusion as to the merits of these causes of action is that, although the documents clearly cover the Galushas' guaranty of the Notes, they do not cover the Michelangelo Lease. *See MII Exports, Inc. v. Feingold*, No.90-3224, 1990 WL 149298, at *6 (E.D. Pa. Sept. 18, 1990) (dismissing counterclaim based on a guaranty where the alleged obligation was not contemplated in the documents); *see also Ctr. 48 Ltd. P'ship v. May Dep't Stores Co.*, 810 A.2d 610, 619 (N.J. Super. Ct. App. Div. 2002) ("[A]n agreement guaranteeing the particular debt of another does not extend to any other indebtedness not within the intention of the parties.").

### D.  **Culpability and Prejudice**

The remaining considerations for granting a default judgment, culpability and prejudice, require no extended discussion. The defendants have been served, and no good excuse is proffered for their failure to respond. The resulting prejudice is that the plaintiff is impaired from pursuing at least one

meritorious claim and recovering amounts owed.

### E. Options as to Entry of Judgment

As I say, however, TIAA has adequately pled only the claim on the Notes, not on the Michelangelo Lease. Unless I dismiss the claims based on the Michelangelo Lease, or they are withdrawn, I cannot enter final judgment, which must dispose of all claims as to all parties.[8] *See Garcia-Martinez v. V. Puzino Dairy, Inc.*, No. 11-6829, 2014 WL 956123, at *1 (D.N.J. Mar. 12, 2014). *U.S. Golf Ass'n v. ISaAC Scoring Sys., LLC*, No. 09-1848, 2010 WL 323203, at *3 (D.N.J. Jan. 20, 2010) ("Until these claims have been either resolved or withdrawn, the Court cannot enter final judgment.").

There is the option of a partial judgment under Federal Rule of Civil Procedure 54. "A default judgment that does not dispose of all of the claims among all parties is not a final judgment unless the court directs entry of final judgment under Rule 54(b)." Fed. R. Civ. P. 55(c) advisory committee's note to 2015 amendment; *see* Fed. R. Civ. P. 54(b) (explaining that the court may direct entry of final judgment as to fewer than all claims "only if the court expressly determines that there is no just reason for delay").

I will not exercise my discretion in that manner. This is a case in which

---

[8] The same is true of TIAA's claim for unjust enrichment, which is asserted in the Complaint (Compl. ¶¶ 34–35) but not raised in the motion for default judgment. (*See* Mov. Br. at 6). To the extent I have found an enforceable agreement between the parties, there is no need to invoke quasi-contractual liability. *See MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 734 (D.N.J. 2008). And even as to the Michelangelo Lease, the claim seems to stand or fall with the existence, or not, of a binding contract; absent such an agreement, TIAA does not adequately allege how the Galushas may be held personally liable for Silverado's debt based on an unjust enrichment theory.

16

defendants have not appeared. It should be disposed of, or not disposed of, but there is no point in simply leaving open indefinitely a claim that I have already found inadequate. I will therefore give the plaintiff two options:

**Option 1**: Plaintiff may opt to abandon the deficient Michelangelo Lease claims. If so, the Court will enter final judgment on the remaining, Notes Claim in an appropriate dollar amount, for the reasons stated in this Opinion, and close the case.

**Option 2**: Plaintiff may, if it wishes, amend the Complaint to remedy the deficiencies in the Michelangelo Lease Claim. The amended complaint must be re-served on the defendants. Should the defendants again default, the plaintiff may move for entry of a default judgment on the amended Michelangelo Lease claims. Should the defendants respond, and/or move to reopen the default, one claim or both may be litigated.

Plaintiff shall make a submission electing for either Option 1 or Option 2 within 14 days. In either case, however, the plaintiff's submission shall contain a representation that the debt has not been discharged in bankruptcy and that this action is not barred by the automatic stay, *see* 11 U.S.C. § 362.

## IV. CONCLUSION

For the foregoing reasons, the motion for default judgment is denied as presented, but relief is granted in part, subject to the plaintiff's exercise of Option 1 or Option 2 and its representation that the bankruptcy proceedings do not bar such relief, within 14 days, as set forth in more detail above. An appropriate Order accompanies this Opinion.

/s/ Kevin McNulty

**Kevin McNulty, U.S.D.J.**